No. 48,974

STATE OF KANSAS, *Appellee,* v. WILLIAM E. JACKSON, JR., *Appellant.*

(575 P 2d 536)

Opinion filed February 25, 1978.

*Ernest H. Moulos,* of Wichita, argued the cause, and was on the brief for the appellant.

*Stephen M. Joseph,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Vern Miller,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal in a criminal action from a jury verdict which found William E. Jackson, Jr., (defendant-appellant) guilty of aggravated robbery (K.S.A. 21-3427); first degree murder (K.S.A. 21-3401); and felony murder (K.S.A. 21-3401).

The appellant asserts numerous trial errors.

The undisputed facts are that on the evening of September 6, 1975, Willis Dewberry, Sammie D. McPhaul and the appellant went to B. J.'s Steakhouse at 2145 East 21st Street in Wichita, Kansas, in order to shoot some pool. Shortly before the threesome left the steakhouse the appellant received a handgun from another unidentified black male. The weapon was described as a black and brown gun with a brown handle.

The men then began driving around on the streets of Wichita. The appellant drove the car which belonged to Dewberry. Sammie McPhaul testified the appellant spotted a white man in an automobile on Fifteenth Street and Dewberry indicated the man

might be collecting some money and he wished to rob him. The threesome followed the potential victim, Marvin D. Clary, for some time until he eventually parked his station wagon in the 2100 block of East Stadium Street. The appellant then stopped the Dewberry car in the parking lot of B. J.'s Steakhouse, and Dewberry and McPhaul left to pursue Mr. Clary.

While McPhaul stood behind some shrubs a short distance away, Dewberry approached the Clary vehicle armed with the gun the appellant received at B. J.'s. As he pulled the gun Mr. Clary jumped out of his car hollering, "Don't shoot" and shouted for help. A struggle between the two men ensued, but Mr. Clary was able to escape. Dewberry then began searching the car. Mr. Clary returned, however, and slammed the car door on Dewberry's legs which were extending beyond the driver's seat of the car. A second struggle followed, and Dewberry shot and instantly killed Mr. Clary at approximately 11:00 p.m. Both Dewberry and McPhaul immediately ran back to B. J.'s parking lot, reported the shooting to the appellant, and the threesome then proceeded to the home of the appellant's parents. After a short visit the three went to a party at the home of mutual friends and then to the Zodiac Club. Finally, in the early morning hours of September 7, 1975, they returned home.

Suffice it to say, the three were eventually arrested for the aggravated robbery and murder of Marvin D. Clary. After their preliminary hearing Sammie McPhaul elected to plead guilty to attempted robbery and voluntary manslaughter.

The appellant and Willis Dewberry were tried jointly on March 15, 1976. The appellant presented an alibi defense but declined to take the stand. Sammie McPhaul testified as a witness for the state and directly implicated both defendants. Numerous eye-witnesses to the shooting corroborated his testimony.

The state also introduced, over objection, the preliminary hearing transcript of Dwight E. Littleton. Mr. Littleton's testimony showed the appellant had sold him a gun similar to the one used in the homicide. Sammie McPhaul had testified the appellant sold Mr. Littleton the gun after the robbery and murder, and Littleton was told the gun was "hot."

After hearing the evidence and arguments of counsel and being instructed by the trial court, the jury returned a verdict of guilty. The appellant's motion for a new trial was denied and appeal has been duly perfected.

The appellant first contends he was prejudicially deprived of his right to a fair and impartial trial when he was tried jointly with his codefendant Dewberry. He claims the trial court erred in refusing to admit Dewberry's confession into evidence because it allegedly exculpated him of the crime charged.

Willis Dewberry gave a confession to the Wichita police in which he stated he and Sammie McPhaul were the only persons who had participated in the attempted armed robbery and shooting of Mr. Clary. Dewberry stated therein it was McPhaul who shot Mr. Clary. At the trial Dewberry exercised his Fifth Amendment right to remain silent. The appellant now claims Dewberry's confession would have been admissible in a separate trial on the ground Dewberry was unavailable as a witness.

We find no merit in this argument. The state tried to offer the confession of Dewberry as evidence in rebuttal, after a complete and lengthy *Jackson v. Denno* hearing was conducted during the trial. Counsel for the appellant did not raise any objection to the court's exclusion of the confession or ever attempt to introduce the confession into evidence. The position taken by the appellant at the trial regarding the confession now precludes him from raising the point for the first time on appeal. (*State v. Watie, Heard and Heard,* 223 Kan. 337, 574 P.2d 1368; and *State v. Hornbeak,* 221 Kan. 397, 404, 559 P.2d 385.)

We have often stated the granting of separate trials lies within the sound discretion of the trial court, and absent an abuse of the exercise of the power of discretion, its action will not be set aside on appeal. (*State v. Watie, Heard and Heard,* supra; *State v. Coe,* 223 Kan. 153, 574 P.2d 929; and *State v. Roberts,* 223 Kan. 49, 574 P.2d 164.) The codefendants were tried on virtually identical charges arising out of the same transaction. Their defenses were neither in conflict nor antagonistic and there was no abuse of discretion in refusing separate trials.

The appellant asserts it was error to be charged and convicted of both premeditated murder and felony murder for the same homicide.

In *State v. Lamb,* 209 Kan. 453, 497 P.2d 275, our court held:

". . . [W]here an information charges a defendant with murder in the first degree on both theories—the premeditated killing *and* killing while in the perpetration of a felony—a defendant is not prejudiced because the state has apprised him that it is proceeding on both theories of first degree murder, and that it intends to produce evidence on both theories." (Syl. 9.)

Thus, the state is *not* required to elect between the murder theories charged as long as the defendant is fully apprised of the charges against him. (See also *State v. Wilson,* 220 Kan. 341, 344, 552 P.2d 931; *State v. Domer,* 1 Ohio App. 2d 155, 204 N.E.2d 69 [1965]; *State v. Nelson,* 175 A.2d 814 [N.H. 1961]; *State v. Bickham,* 239 La. 1094, 121 So. 2d 207 [1960], *cert. denied* 364 U.S. 874, 5 L.Ed.2d 98, 81 S.Ct. 123; and *State v. Rowan,* 233 La. 284, 96 So. 2d 569 [1957].)

In the case at bar, however, the appellant was *convicted* of both premeditated murder and felony murder. He asserts the trial court erred in instructing the jury on both premeditated and felony murder and in allowing the double conviction to stand.

The instructions given by the trial court on first degree and felony murder were taken from PIK, Criminal, §§ 56.01, 56.02 [Revised]. The court also instructed the jury that the appellant would be sentenced for one crime only, stating:

"If, however, you find the killing was committed maliciously and willfully, with deliberation and premeditation, then you may find either or both Defendants guilty of first degree murder under both the felony murder theory in Count III and the theory of malicious and willful and deliberate premeditated killing in Count II, depending on your application of Instruction __7__. In the event you find one or both Defendants guilty under both theories, they would only be punished for one first degree murder."

If the appellant had been sentenced twice as the result of one homicide, clearly such conduct would constitute double punishment which could not be allowed to stand. (See *People v. Goodchild,* 68 Mich. App. 226, 242 N.W.2d 465 [1976]; and *State v. Gilroy,* 199 N.W.2d 63 [Iowa 1972].) Here the instruction on both premeditated murder and felony murder was correct. But the instruction regarding conviction on both theories and the conviction under both theories was technically incorrect. On the facts in this case we find it did not constitute prejudicial error. While no reversible error exists in this case, we hold it to be better practice for the trial court to instruct the jury in the alternative on first degree murder so that no possibility of jury confusion results.

The appellant argues he was deprived of due process of law and equal protection of law when no offer of plea negotiations was extended to him. He reasons, since Sammie McPhaul was accorded plea bargaining, he should have been given the same opportunity.

Our court has recognized the propriety of plea discussions and plea agreements on numerous occasions. (See *Morrow v. State,* 219 Kan. 442, 548 P.2d 727 and cases cited therein.) The appellant overlooks the fact plea bargaining is subject to prosecutorial discretion. The effectiveness of plea bargaining can only be fully achieved if it is carefully and discriminately disbursed to those who would benefit the most in the interest of justice. Moreover, a defendant in a criminal action has no constitutional right to plea bargain. In *Weatherford v. Bursey,* 429 U.S. 545, 51 L.Ed.2d 30, 97 S.Ct. 837, the Supreme Court states:

". . . But there is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial. It is a novel argument that constitutional rights are infringed by trying the defendant rather than accepting his plea of guilty. . . ." (p. 561.)

See also *People v. Peterson,* 398 N.Y.S.2d 24, ___ App. Div. 2d ___ (1977).

Furthermore, the appellant's equal protection argument is not persuasive. In *Bordenkircher v. Hayes,* ___ U.S. ___, 54 L.Ed.2d 604, 98 S.Ct. 663 (slip op. No. 76-1334, decided January 18, 1978), the Supreme Court notes:

". . . In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion. Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, 'the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation' so long as 'the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.' *Oyler v. Boles,* 368 U.S. 448, 456. To hold that the prosecutor's desire to induce a guilty plea is an 'unjustifiable standard,' which, like race or religion, may play no part in his charging decision, would contradict the very premises that underlie the concept of plea bargaining itself. Moreover, a rigid constitutional rule that would prohibit a prosecutor from acting forthrightly in his dealings with the defense could only invite unhealthy subterfuge that would drive the practice of plea bargaining back into the shadows from which it has so recently emerged. See *Blackledge v. Allision, supra,* 431 U.S., at 76." (p. ___.)

See also Comment, 32 U. Chi. L. Rev. 167, 176, n. 37 (1964).

Thus, each defendant must stand on his own for the crimes he has committed. We hold the defendant in a criminal action has no absolute right to plea bargain.

We have examined the various other contentions raised by the appellant and find they are not supported by the record.

The judgment of the lower court is affirmed.