No. 89,056

STATE OF KANSAS, *Appellee,* v. DONALD C. YOUNG, JR., *Appellant.*

(87 P.3d 308)

Opinion filed April 9, 2004.

*Mary Curtis,* assistant appellate defender, argued the cause and was on the briefs for appellant.

*Sheryl L. Lidtke,* assistant district attorney, argued the cause, and *Nick A. Tomasic,* district attorney, and *Phill Kline,* attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: Donald C. Young appeals his first-degree murder and aggravated battery convictions. He challenges the district court's instruction on felony murder, its admission of State witness Rodney Hickman's preliminary hearing testimony because of his unavailability at trial, its refusal to instruct on simple battery and failure to instruct on attempted aggravated battery, and its declaration that Young's father was a hostile witness.

The charges against Young arose out of a drug deal. Kevin Horn, the eventual murder victim, and Daina Frencher drove to pick Hickman up at his home. When Hickman came outside, he spoke to Russell Waters on the sidewalk, and Waters handed Hickman crack cocaine. Hickman then got into the back seat of Horn's car without paying for the drugs, and Waters and Hickman began to argue.

Another man, later identified as Young, then approached the driver's side of the car to secure payment for the crack, and he and Horn argued. Young threatened Horn not to start the car, punched Horn in the face, and, when he saw Horn reach to turn the key in the ignition, said, "You better not drive off, I'll kill you."

Horn started the car despite the threat, and Young fired a shot into the car as Horn accelerated. Frencher jumped out while Young continued to fire four more times into the car. The car crashed into a house with Horn and Hickman still inside. Horn died. Hickman testified during Young's preliminary hearing that he was grazed by a bullet, but an officer testified at trial that Hickman was not injured by the gunfire.

Hickman identified Young as the shooter when interviewed at the scene and later picked Young out of a photo lineup. Frencher also identified Young as the shooter immediately after the murder but testified at trial that she was not able to see the shooter's face. She admitted at trial, however, that she had seen Young in the area before stopping to pick up Hickman, and she gave an accurate description of Young's clothing on the night of shooting. Young's defense was mistaken identity.

Hickman disappeared during Young's trial, although he was under subpoena to testify. The investigator who had served the subpoena on Hickman also gave him and his father a ride to the court-

house and directed them to the room in which they were to wait for Hickman's turn on the stand. Later that day, it was discovered that Hickman had left the room to go to the restroom and never returned. The investigator attempted to find him, both by driving to the neighborhood where he believed Hickman's girlfriend was living and by calling her residence, but was unsuccessful.

The next morning, the investigator called Hickman's father, who reported that his son had arrived home late the previous evening. By this time, the investigator knew a warrant had been issued for Hickman's arrest because of his failure to report to a probation hearing. The investigator drove to Hickman's house, woke Hickman up, and told him he had to go to court. After Hickman dressed, he and the investigator were walking to the investigator's car, when Hickman ran away again. The investigator tried but failed to apprehend him.

Based on the investigator's account of these efforts to get Hickman to court, the district judge declared Hickman unavailable and allowed a tape of his testimony at Young's preliminary hearing to be played to the jury in Young's trial.

Before trial, Young's father had told police officers that his son admitted his involvement in Horn's death and that he had seen his son in the company of Waters on the night of crime. During trial, when an officer was asked if Young's father was "lucid" while answering questions, the officer said no; however, when asked if Young's father was "clear and able to understand everything," the officer said yes. For his part at trial, Young's father denied that Young had admitted involvement in the murder, denied that he had seen his son with Waters, and asserted for the first time that his son was at home during the time of the shooting. In regard to his earlier statements to police, Young's father testified he had been medicated and scared when interviewed. The district court declared Young's father a hostile witness.

The district court instructed the jury *sua sponte* on felony murder, although the information had charged Young only with premeditated first-degree murder of Horn and aggravated battery of Hickman. Young did not object to the felony-murder instruction, which stated: "If you do not agree the defendant is guilty in count

one of murder in the first degree-premeditated, you should then consider the lesser offense of murder in the first degree-felony murder."

The instruction on aggravated battery stated: "To establish this charge, each of the following claims must be proved: That the defendant intentionally caused bodily harm to another person, to wit: Rodney Hickman, in any manner whereby great bodily harm, disfigurement or death can be inflicted." The judge refused a defense request for a lesser included offense instruction on simple battery, saying:

"[W]hile it appears that the young man who was struck by the bullet only received a slight wound, this was clearly done with a firearm. He was shot at and I believe the instruction given here is appropriate as to if the jury believes that the defendant committed the act and the jury believes that this man was struck by the bullet, it was done in a manner whereby great bodily harm, disfigurement or death can be inflicted. . . . [F]iring a gun at short range at an individual in a car is clearly that particular crime and I don't think given the fact the defendant denied doing it is any basis for giving a lesser included of simple battery in this case."

### Instruction on Felony Murder

Young's failure to object to the felony-murder instruction means his appellate challenge is governed by K.S.A. 2003 Supp. 22-3414(3): "No party may assign as error the giving or failure to give an instruction, including a lesser included crime instruction, unless the party objects thereto before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objection unless the instruction or the failure to give an instruction is clearly erroneous." Instructions are clearly erroneous "only if the reviewing court is firmly convinced that there is a real possibility that the jury would have rendered a different verdict if the error had not occurred. [Citations omitted.] " *State v. Davis*, 275 Kan. 107, 115, 61 P.3d 701 (2003).

The felony-murder instruction given in Young's case was not a correct statement of Kansas law, because felony murder is not a "lesser offense" of premeditated first-degree murder. In fact, felony murder and premeditated murder define the same crime — first-degree murder — committed by alternative means. See *State v. Morton*, 277 Kan. 575, 86 P.3d 535 (2004); *State v. Hoge*,

276 Kan. 801, 809-10, 80 P.3d 52 (2003). The felonious conduct proved in a felony-murder prosecution stands in for the deliberation and intent ordinarily required to be proved in a premeditated murder case. See, *e.g., Morton*, 277 Kan. 575, Syl. ¶ 1.

The district court's misstatement was literally but not legally "clearly erroneous" because the remainder of the instruction's content and its inclusion in the case were proper. It was not error to have the jury consider a felony-murder theory in the alternative to a premeditation theory, even though felony murder had not been described in the information. See *State v. Foy*, 224 Kan. 558, 565-66, 582 P.2d 281 (1978); see also *State v. Hall*, 246 Kan. 728, 747-49, 793 P.2d 737 (1990), *overruled on other grounds Ferguson v. State*, 276 Kan. 428, 442-45, 78 P.3d 40 (2003) (unnecessary to charge defendant with underlying felony, recite elements of underlying felony in felony-murder charge; under *Foy*, State need not charge felony murder, underlying felony as long as defendant charged with premeditated murder); *State v. Murdock*, 236 Kan. 146, 154, 689 P.2d 814 (1984) (charge limited to premeditated murder adequate to support felony-murder instruction where evidence of the underlying felonies clear).

In *Foy*, the defendant shot and killed his wife at her mother's home after a long history of marital strife. He was charged with premeditated murder but not with aggravated burglary of the home. After putting on its evidence, the State announced that it would not seek a felony-murder instruction. At the close of the defense case, however, the State requested and received a felony-murder instruction over the defendant's objection. The jury convicted the defendant on the felony-murder theory.

This court rejected the defendant's argument that the jury could not be instructed on felony murder because the charge against him had been limited to a premeditation theory:

"[A]n information in the ordinary form charging that a killing was done with malice aforethought, deliberation, and premeditation is sufficient to sustain a conviction of murder in the first degree committed in perpetration of a robbery or burglary. [Citation omitted.] Therefore, the fact that felony murder was not charged in the

information does not preclude an instruction where evidence supports the instruction. [Citation omitted.]" Foy, 224 Kan. at 566.

But this court reversed the defendant's conviction because the State's sandbagging had prejudiced him in the presentation of his case. 224 Kan. at 567, 570.

Neither Young nor the State has cited *Foy*. Young urges us to rely instead on *State v. Jackson*, 223 Kan. 554, 575 P.2d 536 (1978), and *State v. Thompkins*, 263 Kan. 602, 952 P.2d 1332 (1998), claiming those cases required the State to charge him in the alternative with felony and premeditated murder to avoid a due process violation.

In *Jackson*, the defendant was charged and convicted of *both* felony murder and premeditated murder for a single homicide. On appeal, he argued that the district court's instructions on premeditated and felony murder were faulty and that the double conviction could not stand. This court affirmed. Although the instruction allowing the jury to convict on both felony and premeditated murder for one killing should have been phrased in the alternative, there was no prejudicial error. The defendant got only one sentence. *Jackson*, 223 Kan. at 557. This result in *Jackson* is consistent with more recent case law from this court, see *State v. Wakefield*, 267 Kan. 116, 136-41, 977 P.2d (1999) (where appellate court cannot tell from verdict form whether defendant convicted on premeditation theory or felony-murder theory, only sentence for felony murder appropriate); *State v. Vontress*, 266 Kan. 248, 262-64, 970 P.2d 42 (1998) (only defendant whose jury agrees unanimously on premeditation theory may be sentenced to harsher penalty reserved for that theory), but it does not support Young's argument here. In effect, Young's jury received exactly the alternative jury instruction *Jackson* recommended, despite the absence of *Jackson*'s dual charge.

*Thompkins* is more helpful to Young in result but not in analysis. In that case, the defendant was charged in the alternative with felony murder and premeditated murder. The premeditation theory was rejected after preliminary hearing, and the court rejected the State's later motion to proceed on an amended information

that reinserted it. The State then suggested that it could present its premeditation evidence at trial anyway, and the court could instruct on it if the evidence supported such an instruction at that time. The defendant did not object to this procedure, and the district judge permitted the State to pursue that approach. At the close of the evidence, the judge concluded that a premeditation instruction could be given after all. Again, the defense did not object.

Despite the passivity exhibited by the defense, the *Thompkins* court voted 4-3 to reverse the defendant's conviction on appeal. 265 Kan. at 625, 628. The majority opinion, written by Justice Lockett, did not explain why the procedure employed by the district court prejudiced the rights of the defendant. There could have been no surprise; the State's agenda could not have been more clear. Justice Lockett noted only that the State had not appealed the district court's initial rejection of the premeditation theory and that the inclusion of the premeditation instruction came too late for the defendant to challenge the theory by means of K.S.A. 22-3208(3), which deals with defects in the initiation of criminal proceedings. 263 Kan. at 620-21.

Justice Six, writing for himself, Chief Justice McFarland, and Justice Davis in dissent, was more analytical and persuasive. He emphasized the lack of an objection from the defense, the State's evidence of premeditation, and the absence of surprise. *Thompkins*, 263 Kan. at 628.

Neither the *Thompkins* majority nor the dissent mentioned or cited *Foy* — either its general rule that a charge of premeditated murder will support a conviction of felony murder or its particular exception for particularly misleading behavior by the prosecution. The omission of any citation to or discussion of *Foy* in *Thompkins* undercuts its authority and precedential value, and we limit it strictly to its facts.

Here, the evidence presented at trial was plainly sufficient to support Young's felony-murder conviction. At the time of the murder, Young was involved in the sale of cocaine, which is listed as an inherently dangerous felony. See K.S.A. 2003 Supp. 21-3436(14). Young was carrying a gun; he threatened to shoot Horn

if Horn turned the key in the car's ignition; and he shot into the car five times when the drug deal soured.

Just as important, we detect no misleading conduct by the prosecution counseling against application of *Foy's* general rule. Although Young stated otherwise, it is evident from the record that both sides in the case as well as the district court anticipated the State's reliance on a felony-murder theory. During voir dire, the prosecutor mentioned the possibility of conviction on that theory. There was no defense objection to this statement. After voir dire but before the prosecution's opening statement, the court referenced the theory again when discussing plea negotiations. Finally, the defense did not object during the instructions conference and did not react during closing argument when the prosecutor urged the jury to find Horn's murder occurred during Young's commission of the crime of selling drugs. These instances demonstrate that Young had notice of the State's use of the felony-murder theory and never took issue with it.

We therefore hold that the information charging Young with premeditated murder of Horn was sufficient to support instruction on felony murder. There was no due process violation, and no reversible error despite the district court's misstatement of the relationship between the two possible theories supporting commission of first-degree murder. We are firmly convinced there was no reasonable possibility that the jury would have rendered a different verdict if the district court had not made the mistake of calling felony murder a "lesser offense" of premeditated murder.

### Admission of Preliminary Hearing Testimony

The appellate standard of review when a district court has determined that a witness is unavailable to testify is abuse of discretion. *State v. Rodriguez-Garcia*, 27 Kan. App. 2d 439, 442, 8 P.3d 3 (1999), *rev. denied* 269 Kan. 939 (2000). "A trial court abuses its discretion only when judicial action is arbitrary, fanciful, or unreasonable, or when no reasonable person would adopt the trial court's view." *State v. McCray*, 267 Kan. 339, 354, 979 P.2d 134 (1999).

K.S.A. 60-459(g) defines "unavailable as a witness" as including "situations where the witness is . . . (5) absent from the place of

hearing because the proponent of his or her statement does not know and with diligence has been unable to ascertain his or her whereabouts."

The Court of Appeals has stated: "Before a witness may be declared unavailable and before the State may use the prior testimony of an absent witness, the State must show that the witness cannot be produced at trial by the exercise of due diligence and good faith. [Citation omitted.]" *Rodriguez-Garcia,* 27 Kan. App. 2d at 442. The State must present "actual evidence of its efforts." 27 Kan. App. 2d at 442.

"The right of a defendant to confront and cross-examine the witnesses against him or her is a valuable and constitutionally protected right. We do not believe that a defendant can be deprived of that right absent 'full and convincing' evidence that the authorities have made a reasonable effort to locate an unavailable witness." *State v. Mitchell,* 18 Kan. App. 2d 530, 535, 855 P.2d 989 (1993).

Moreover, " ' "each case turns on its own particular facts and circumstances." ' [Citation omitted.]" 18 Kan. App. 2d at 534.

Here, the investigator's extensive testimony regarding his attempts to get Hickman to the witness stand fulfilled the State's obligation to present evidence. There was no abuse of discretion in the district court's conclusions that the State had been reasonably diligent and that Hickman was unavailable. A reasonable person easily could take the view adopted by the district court.

"[Once a] judge finds that the declarant is unavailable as a witness at a hearing, testimony given as a witness in another action or in a preliminary hearing or former trial in the same action may be used, except such testimony may not be used in criminal actions if it denies to the accused the right to meet the witness face-to-face." *State v. Ruebke,* 240 Kan. 493, 517, 731 P.2d 842, *cert. denied,* 483 U.S. 1024 (1987).

See K.S.A. 2003 Supp. 60-460(c)(2). "The Sixth Amendment right of confrontation is satisfied if the accused confronted the witnesses against him at any stage of the proceedings in the same case and has had an opportunity of cross-examination." *McCray,* 267 Kan. at 353 (citing *Ruebke,* 240 Kan. at 517); see also *Crawford v. Washington,* 124 S. Ct. 1354 (March 8, 2004) (Confrontation Clause of Sixth Amendment commands reliability assessment in particular manner: by testing in crucible of cross-examination).

In *Ruebke*, the court found that a witness was unavailable. Because the witness had previously given testimony at the preliminary hearing where

" 'the defendant at that time was represented by an attorney who availed himself of the opportunity to cross-examine the witness[,] . . . [t]he right of the accused to be confronted by his accusers was honored. The witness' prior testimony bore sufficient indicia of reliability and afforded the trier of fact a satisfactory basis for evaluating the truth of the prior statement.' " *Ruebke*, 240 Kan. at 518 (quoting *State v. Mick*, 229 Kan. 157, 161, 621 P.2d 1006 [1981]).

Young was represented by counsel at his preliminary hearing and had an opportunity to cross-examine Hickman. Although Young claims that Hickman's statements at the preliminary hearing were inconsistent with statements Hickman made at the crime scene, any inconsistency could have been addressed on cross-examination during the preliminary hearing. Young's counsel need not have waited until trial. Young's inability to cross-examine Hickman a second time does not equate to a Confrontation Clause violation. See *McCray*, 267 Kan. 339, Syl. ¶ 6. Young is not entitled to reversal on this issue.

### Lesser Included Battery Instructions

On appeal, Young argues that the district court should have instructed on the lesser included offenses of simple battery and attempted aggravated battery. At trial, Young requested an instruction on a "lesser included offense of battery," and the district court responded that the evidence did not support an instruction on simple battery. Young did not request or object to the absence of an attempted aggravated battery instruction. Thus different standards of review must be applied to each of Young's lesser included instruction arguments on appeal.

Regarding the district court's denial of the requested simple battery instruction, the standard of review for a claim of failing to instruct on a lesser included crime is whether the evidence, when viewed in the light most favorable to the defendant, supported the instruction. The instruction need not be given if the evidence would not have permitted a rational factfinder to find the defendant guilty beyond a reasonable doubt of the lesser included offense.

*State v. Bolton*, 274 Kan. 1, 7, 49 P.3d 468 (2002). Stated another way, a criminal defendant has a right to an instruction on all lesser included offenses as long as "(1) the evidence, when viewed in the light most favorable to the defendant's theory, would justify a jury verdict in accord with the defendant's theory and (2) the evidence at trial does not exclude a theory of guilt on the lesser offense." *State v. Williams*, 268 Kan. 1, 15, 988 P.2d 722 (1999).

Simple battery is "(1) Intentionally or recklessly causing bodily harm to another person; or (2) intentionally causing physical contact with another person when done in a rude, insulting or angry manner." K.S.A. 2003 Supp. 21-3412(a). As mentioned, Young's jury was told that he committed aggravated battery if he "intentionally caused bodily harm" to Hickman "in any manner whereby great bodily harm, disfigurement or death can be inflicted." See K.S.A. 21-3414(a)(1)(B).

Young's defense was mistaken identity. There was no dispute that the assailant fired his gun five times into the car, beginning when the car was within feet, if not inches, of the weapon. This uncontroverted evidence would not have permitted a rational factfinder to conclude that the assailant committed merely a simple battery. The district court did not err in refusing to instruct on that crime. See *State v. Perry*, 266 Kan. 224, 231, 968 P.2d 674 (1998); *State v. Little*, 26 Kan. App. 2d 713, 718, 994 P.2d 645 (1999), *rev. denied* 269 Kan. 938 (2000).

Young's second lesser included argument is that the district court should have instructed on attempted aggravated battery because the evidence on whether the assailant succeeded in shooting Hickman was conflicting. Given Young's failure to request this instruction or object to its absence at trial, we will not review this claim unless we detect clear error. See K.S.A. 2003 Supp. 22-3414(3); *State v. Lowe*, 276 Kan. 957, 963-64, 80 P.3d 1156 (2003); *State v. Hermosillo*, 272 Kan. 589, 595, 35 P.3d 833 (2001).

Young is correct that the evidence at trial was conflicting on whether Hickman was wounded by gunfire. Although Hickman had testified at the preliminary hearing that he was grazed by a bullet, a police officer who spoke to Hickman at the crime scene said Hickman had not been shot.

The jury could reasonably have found Young attempted to shoot Hickman, *i.e.*, attempted to commit an aggravated battery but failed "in the perpetration thereof." See K.S.A. 21-3301(a) (defining attempt). The district court therefore had a duty to instruct on the lesser included offense of attempted aggravated battery. Its failure to do so was clear error necessitating reversal of Young's aggravated battery conviction. We are convinced that there was a possibility on the evidence in this record that the outcome on the aggravated battery count would have been different if the jury had been correctly instructed.

### Hostile Witness Declaration

The determination of whether a witness is hostile is entrusted to the discretion of the district court. It should be "based upon the demeanor of the witness, the witness' situation and relationship to and with the parties, the witness' interest in the case, and the inducements he or she may have for withholding the truth." *State v. Manning,* 270 Kan. 674, 681-82, 19 P.3d 84 (2001). Once a witness is declared hostile, the witness may on direct examination be subjected to leading questions, see K.S.A. 60-243(b), and be examined regarding prior inconsistent statements, see K.S.A. 60-422. In this case, the district court's declaration that Young's father was a hostile witness enabled the State to question him about the statements he had made to police that had incriminated his son. Young asserts that the district court's ruling violated his right to confrontation.

Kansas law draws a distinction between a witness who merely fails to testify as—expected and one who gives testimony that is "affirmative, contradictory, and adverse to the party calling the witness." *Manning,* 270 Kan. at 686. Only the latter witness is hostile. Moreover, a witness who does not recall making the earlier statement or statements or who simply refuses to testify is not considered available for cross-examination at trial, a factor important in Sixth Amendment Confrontation Clause analysis. See *State v. Lomax & Williams,* 227 Kan. 651, 656-62, 608 P.2d 959 (1980).

"[E]vidence of prior hearsay statements cannot be used to impeach a witness who simply refuses to testify or testifies that he cannot remember anything. . . .

"[W]here a prosecution witness refuses to take an oath or refuses to give testimony of any sort or responds with answer such as, 'I don't recall' or 'I don't know,' his prior hearsay statements are not admissible under the constitutional confrontation rule. . . .

. . . .

"[The Witness'] testimony was not affirmative, contradictory, or adverse to the party calling her . . . [citation omitted]. She simply refused to testify, claiming that she couldn't remember. . . . The prior testimony of [the witness] was not admissible for the reason that, although present at the hearing, she was not available for cross-examination." 227 Kan. at 660-62.

We see no abuse of discretion in the district court's decision in this case. Young's father's testimony at trial was certainly contradictory to his prior statements to the police officer; suddenly he was providing an alibi for his son and claiming that he had not seen Waters with his son on the evening of the murder. He also denied that his son ever confessed to him. He was not unavailable for cross-examination because of memory loss or a refusal to testify. To the extent memory was in issue, it appeared selective. See *Manning*, 270 Kan. at 690.

The district court was in the best position to weigh the witness' demeanor. His relationship to the defendant and the inducements that relationship might provide for withholding the truth are equally obvious to this court. Defense counsel had ample opportunity to rehabilitate Young's father on his earlier statements and the circumstances at the time he made them. The jury was properly left to decide which of his stories was more credible. There was no abuse of discretion by the district court.

Affirmed in part, reversed in part, and remanded.