NOT DESIGNATED FOR PUBLICATION

No. 117,899

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JENNIFER S. GUERRERO,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; JAMES R. MCCABRIA, judge. Opinion filed October 5, 2018. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., PIERRON and POWELL, JJ.

PER CURIAM: After a bench trial, Jennifer S. Guerrero was convicted of felony theft after stealing $1,474 from her employer. On appeal, Guerrero asserts the district court erred by (1) finding a witness unavailable and then admitting that witness' preliminary hearing testimony at trial, and (2) violating her right to allocution at sentencing by denying her request to have her two minor sons testify. After a review of the record, we find no reversible error and affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

Guerrero worked at the Lawrence, Kansas, Chick-fil-A restaurant owned by Denise Martinek. Elizabeth McCollom was a day shift manager at the time.

Typically, when a manager opens the store, the employees scheduled to start that morning wait outside until the manager unlocks the door and deactivates the security system before coming inside. However, on the morning of December 14, 2015, at 5:42 a.m., Guerrero followed McCollom inside as soon as she opened the door, chatting about a dream she had the night before and claiming that she wanted to practice opening the business. While McCollom started brewing tea for the day, Guerrero headed to open the safe, without informing McCollom she was going to do so. The in-store security camera footage confirmed that Guerrero opened the safe unsupervised.

When McCollom joined Guerrero at the safe, Guerrero informed McCollom that the restaurant's cash bag was missing. The two looked for the bag and did not find it. Martinek was alerted that the cash bag had disappeared, and then McCollom and Guerrero continued counting the money for opening. At some point while looking for the bag, Guerrero left McCollom to use the restroom. Guerrero ended her shift early that day, claiming that her son was stabbed at school.

Later on that day, Guerrero texted McCollom stating "that she wasn't a bad person, and there were things in her life that [McCollom] couldn't understand." That same week, Guerrero emailed Martinek to apologize for betraying her trust, explaining that her family needed money for rent and a car payment. She also asked Martinek not to press charges. The cash bag remained missing for weeks until an employee discovered it in the seat-cover dispenser in the restroom.

The State charged Guerrero with felony theft, contrary to K.S.A. 2015 Supp. 21-5801(a)(1), (b)(3), a level 9 nonperson felony. Shortly before trial, the State discovered that McCollom had moved to Amsterdam to complete missionary work through a program with the university she attended. As a result, the State moved to allow McCollom's preliminary hearing testimony to be read into the record at trial because of her unavailability. Guerrero argued that the State could have discovered McCollom's plans to move to the Netherlands months earlier had the coordinator been more diligent in keeping up with her and that the general rules regarding unavailability of witnesses did not apply because the State failed to exercise due diligence and depose McCollom before trial.

At a subsequent hearing on the motion, the State's special investigator testified that because she did not serve the initial subpoena on McCollom, she had not had any contact with McCollom before the preliminary hearing. About a month before the trial date, however, the investigator received a new subpoena for McCollom. When she contacted Martinek about serving the subpoena to McCollom at the Chick-fil-A, Martinek informed the investigator that McCollom had left for Amsterdam. Initially, the investigator assumed that Martinek meant Amsterdam, New York; she learned that McCollom had moved to the Netherlands when she served Martinek the next day. She testified that she receives about 50 subpoenas a month to serve.

The victim/witness coordinator handling Guerrero's case also testified. She was responsible for coordinating the witnesses for all 10 of Guerrero's cases on the day of the preliminary hearing and for arranging travel reimbursements. Because of the high volume of witnesses, she had only a vague recollection of McCollom. Moreover, some of the other witnesses were more transient, leading the coordinator to focus on compiling their contact information. As such, she learned that McCollom had left the country only after the investigator spoke to Martinek. The coordinator subsequently learned that McCollom

3

had arranged a mission trip through a university organization at some point and had left the country about six months after the preliminary hearing.

The coordinator also testified that with her heavy caseload—approximately 400 cases at a time—she lacked the ability to regularly call witnesses and ask about their long-term plans. Further, she testified that it was not abnormal for her not to speak to witnesses ahead of trial and that she typically was not informed when witnesses moved. She admitted that she tried to keep abreast of students' schedules, but she did not know that McCollom was a student. She estimated that it would cost around $1,000, one way, to fly McCollom back for the trial.

At the conclusion of the hearing, the district court held that McCollom was unavailable for trial, considering the particulars of the case, the heavy load of the State's staff, and the fact that the State tried to serve the subpoena a reasonable time before trial. Further, the district court held that even if the State had failed to exercise due diligence in this case, a deposition likely would not have provided different testimony than the preliminary hearing, especially because McCollom had been subject to cross-examination at the preliminary hearing. The district court also noted that the State acted quickly to find out the details about McCollom's trip when it discovered that she had left the country. The district court granted the State's motion.

The case proceeded to a bench trial on March 7, 2017. Based on the district court's ruling, the State read McCollom's preliminary hearing testimony into the record at the trial over Guerrero's objection. Martinek testified both about the general procedures at the restaurant and the events on the day in question. She explained that when she closed the restaurant Saturday night, the cash bag contained $1,474. She recalled telling McCollom to keep Guerrero at the restaurant after the bag disappeared, as she had noticed money missing on other occasions and suspected Guerrero. The investigating officer testified about collecting security footage and about McCollom's text message from Guerrero. She

4

also looked into Guerrero's claim that her son had been stabbed at school but found nothing corroborating that claim.

Guerrero testified in her own defense. She explained that on the day in question she felt a lot of anxiety about both her responsibilities at the restaurant and recent contact with law enforcement. She testified that while trying to open the safe she got distracted multiple times by her coworkers and that she opened, closed, and stepped away from the safe several times. By the time she resolved all these issues and put her jacket in her locker, the cash bag had disappeared. She and McCollom looked for the bag in the office and then she asked to go to the bathroom. She stopped at her locker and then went to the bathroom.

According to Guerrero, her apology to Martinek revolved around the fact that she had never disclosed being on probation in another case, which she worried betrayed Martinek's trust. Guerrero acknowledged that she lied about her son being stabbed at school because she was worried about her arrest warrant in another case. She justified her lie by explaining that she did not want her employer knowing she potentially had a warrant out for her arrest, so she told the manager that she needed to leave and then went to the courthouse to sort out her other case.

The district court convicted Guerrero of felony theft as charged.

Because Guerrero had several recent convictions, the district court conducted a sentencing hearing for all of the cases on May 8, 2017. Guerrero arranged for several witnesses to testify for her at sentencing, including her husband and three sons. The district court had no objections to her husband and adult son testifying; however, the judge felt reluctant to allow her minor sons—ages 12 and 14—to testify. The court asked for a proffer of the minor sons' statements. Guerrero admitted that her middle son's testimony would be cumulative but that the youngest would testify about his mental

5

disability and her role as his caregiver. Ultimately, the district court declined to hear the testimony, recognizing that children 14 and 12 generally want their mother present and it would be a hardship on them to not have their mother at home.

After hearing all of the testimony and proffered statements, the district court applied a special sentencing rule contained in K.S.A. 2017 Supp. 21-6604(f)(4). While the severity level of Guerrero's crime and her criminal history score dictated a presumptive probation sentence, because she committed the crime while on felony bond in a different case, the special rule permitted imposition of a prison sentence rather than probation without a departure. After a long discussion of the impact of Guerrero's offenses against the community and her apparent lack of remorse, the district judge stated:

> "[M]any of the comments that I heard today to the extent any of them went beyond what the court might normally consider directly commenting on the impact of a particular victim, I think that it's certainly appropriate for the court to consider the type of offense that the person committed while on felony bond in deciding whether to apply that special rule.

> . . . .

> ". . . Of course I don't know you. But I can just tell you, I have never seen you appear in this courtroom and in any way express what I thought of as sincere remorse. Today when you chose to have your family present and present circumstances to this court that I should take into consideration of whether I should send you to prison or not, I saw you pulling Kleenex out of the box, wiping away tears. But when I saw the people that you have had the most direct impact on and who you stood here and told me you think about every day, and I saw no sort of even faint empathy or recognition of impact that you'd had, that's just consistent with what I've seen throughout your appearance in this courtroom.

6

"Again, ma'am, I don't know you. I can only go off of what I see and hear in the courtroom. And I'm just telling you I don't have the impression that you have sympathy.

"And what prompted you to have your young children sit in this courtroom during this sentencing and hear these people make their comments about you and have you address the court with your children present, it tells me this, ma'am. You need to spend some serious time truly thinking about the impact of your actions. The actions today have impacts on people. And beyond the victims in this case.

"So I'm not sentencing you—I'm not going to apply the special rule because of that. I'm just making a record of the things that have gone into this court's consideration. I'm applying the special rule in this case because I believe it is absolutely appropriate. I believe the nature of the crime that we're talking about, considering it was committed while you were on felony bond for these other offenses, the number of offenses you committed, the types of people that were the victims of those crimes.

"Again, I'm not trying to pile on. I'm just making the record complete. And I think there is no question in my mind it's appropriate to apply the special rule here. I'm not doing it out of anything other than what I believe the legal system sentences people to prison to punish them for their conduct, to prevent harm to other people. I have a concern that you need to be punished so that you can come to terms with this."

The district court sentenced Guerrero to 11 months' imprisonment. Guerrero timely appeals.

I.    DID THE DISTRICT COURT ERR IN DECLARING A WITNESS UNAVAILABLE AND ALLOWING THE WITNESS' PRELIMINARY HEARING TESTIMONY TO BE READ AT TRIAL?

First, Guerrero argues the district court erred in declaring McCollom unavailable for trial. Specifically, she argues the State failed to exercise diligence in coordinating the witness and, but for this lack of due diligence, McCollom could have been deposed prior to her departure from the country and before the trial. The State responds that there is

nothing in the record to indicate that it failed to exercise due diligence in locating McCollom before trial and that McCollom was subject to cross-examination by Guerrero at the preliminary hearing.

Generally, a witness' earlier testimony is admissible at trial provided the witness is unavailable and the adverse party had an opportunity to cross-examine that witness. K.S.A. 2017 Supp. 60-460(c); *State v. Young*, 277 Kan. 588, 597-99, 87 P.3d 308 (2004).

"The appellate standard of review when a district court has determined that a witness is unavailable to testify is abuse of discretion. 'A trial court abuses its discretion only when judicial action is arbitrary, fanciful, or unreasonable, or when no reasonable person would adopt the trial court's view.' [Citations omitted.]" 277 Kan. at 597.

Under K.S.A. 60-459(g), a witness is "unavailable" when the witness is "(4) absent beyond the jurisdiction of the court to compel appearance by its process, or (5) absent from the place of hearing because the proponent of his or her statement does not know and with diligence has been unable to ascertain his or her whereabouts."

> "'Before a witness may be declared unavailable and before the State may use the prior testimony of an absent witness, the State must show that the witness cannot be produced at trial by the exercise of due diligence and good faith. [Citation omitted.]' *Rodriguez-Garcia*, 27 Kan. App. 2d at 442. The State must present 'actual evidence of its efforts.' 27 Kan. App. 2d at 442.

> "'The right of a defendant to confront and cross-examine the witnesses against him or her is a valuable and constitutionally protected right. We do not believe that a defendant can be deprived of that right absent "full and convincing" evidence that the authorities have made a reasonable effort to locate an unavailable witness.' *State v. Mitchell*, 18 Kan. App. 2d 530, 535, 855 P.2d 989 (1993).

"Moreover, '"each case turns on its own particular facts and circumstances." [Citation omitted.]' 18 Kan. App. 2d at 534." *Young*, 277 Kan. at 598.

Here, the testimony of the investigator and coordinator regarding their attempts to get McCollom to the witness stand fulfilled the State's obligation to present evidence. There was no question that McCollom was out of the jurisdiction of the court—she was living in the Netherlands at the time of trial. There is nothing in the record to indicate that the State failed to exercise due diligence in locating McCollom. The coordinator testified that she did not know McCollom was a student and, as a rule, she did not just assume a 20-year-old was a college student. It appears based on the record that only Martinek knew about McCollom's plans to move to the Netherlands. As such, the coordinator did not reach out to McCollom like she normally would a college student but, instead, treated her like any other lay witness, especially in light of her caseload. The record is clear that the State did not know of McCollom's status as a student or as a missionary until the investigator uncovered this information a month before trial when she began to serve subpoenas. Once this information was uncovered the State worked quickly to ascertain the details of McCollom's move.

There was no abuse of discretion in the district court's conclusions that the State had been reasonably diligent and that McCollom was unavailable.

"'[Once a] judge finds that the declarant is unavailable as a witness at a hearing, testimony given as a witness in another action or in a preliminary hearing or former trial in the same action may be used, except such testimony may not be used in criminal actions if it denies to the accused the right to meet the witness face-to-face.' *State v. Ruebke*, 240 Kan. 493, 517, 731 P.2d 842, *cert. denied* 483 U.S. 1024 (1987)." *Young*, 277 Kan. at 598.

"The Sixth Amendment right of confrontation is satisfied if the accused confronted the witnesses against him at any stage of the proceedings in the same case and has had an

9

opportunity of cross-examination." *State v. McCray*, 267 Kan. 339, 353, 979 P.2d 134 (1999); see *Young*, 277 Kan. at 599.

In *Young*, 277 Kan. at 599, the Kansas Supreme Court held that the district court did not err in admitting a witness' pretrial testimony because "Young was represented by counsel at his preliminary hearing and had an opportunity to cross-examine [the witness]. . . . Young's inability to cross-examine [the witness] a second time does not equate to a Confrontation Clause violation. See *McCray*, 267 Kan. 339, Syl. ¶ 6." 277 Kan. at 599; see *State v. Mick*, 229 Kan. 157, 161, 621 P.2d 1006 (1981).

Here, Guerrero was represented by counsel at her preliminary hearing and had an opportunity to cross-examine McCollom. Accordingly, there was no Confrontation Clause violation. The district court did not err in admitting McCollom's preliminary hearing testimony at trial.

II.     DID THE DISTRICT COURT VIOLATE GUERRERO'S RIGHT TO ALLOCUTION?

Second, Guerrero argues the district court violated her right to allocution. Specifically, she argues that the district court erred when it refused to allow her two minor sons to testify at sentencing because under her statutory right to allocution she was permitted to present any evidence in mitigation of her punishment. The State responds that any error was harmless as the district court took a proffer of the evidence rather than having the minor children testify. The State also asserts that the district court sentenced Guerrero in accordance with a special sentencing rule and that mitigating evidence would have had no impact on the operation of the rule.

At sentencing, Guerrero moved to admit the testimony of her 14-year-old and 12-year-old sons, but the district court did not allow them to testify. Guerrero objected to this as a violation of her right to present mitigating evidence during her allocution. The

10

district court overruled her objection but accepted a proffer of the evidence. Guerrero proffered the following: Her 14-year-old son would testify largely consistent with his older brother, and her 12-year-old would explain how his mother's presence was important to him in light of his disability for which she provided and ensured his treatment.

This right to allocution is a statutory right, not a constitutional one. See *State v. Stallings*, 284 Kan. 741, 750-51, 163 P.3d 1232 (2007). Therefore, we review a claim that the district court violated a defendant's right to allocution under a harmless-error standard, which is whether there is a reasonable probability that the error affected the outcome of the proceeding. *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012).

"Before imposing sentence the court shall . . . address the defendant personally and ask the defendant if the defendant wishes to make a statement on the defendant's own behalf and to present any evidence in mitigation of punishment." K.S.A. 2017 Supp. 22-3424(e)(4). "For a defendant to successfully assert error based upon a denial of the opportunity to present evidence in mitigation of punishment pursuant to the right to allocution in K.S.A. 1994 Supp. 22-3424(4), the defendant must make a proffer of the contemplated evidence comparable to that required by K.S.A. 60-405." *State v. Hunt*, 257 Kan. 388, Syl. ¶ 10, 894 P.2d 178 (1995).

On appeal, Guerrero relies heavily on *State v. Hutton*, No. 98,374, 2008 WL 2796466 (Kan. App. 2008) (unpublished opinion), where the district court both prevented the defendant's wife from speaking at sentencing and failed to inform him of his statutory right to present mitigating evidence. The *Hutton* panel held that these limitations did indeed violate the defendant's right to allocution. 2008 WL 2796466, at *2. Yet, in the case at hand, the district court did not completely prevent Guerrero from presenting mitigating evidence. Rather, the district judge simply declined to let her minor children

testify because of his concern for their well-being and instead accepted a proffer of their testimony. Guerrero's husband and son testified to the same essential facts that her minor children planned to address—her importance in their lives and her role as a caregiver for the youngest son. The bar on allocution in *Hutton* is simply not present in the case at hand.

But even if we were to assume the district court erred by forbidding the minor sons' testimony, there is no reasonable probability that this error affected the outcome of the proceeding—in this case, Guerrero's sentence. First, the district court heard and considered Guerrero's proffered evidence, noting that children 14 and 12 generally want their mother present and it would be a hardship on them not to have their mother at home.

Additionally, and most importantly, the district court clearly explained that its decision to sentence Guerrero to imprisonment turned on the application of the special sentencing rule which authorized the imposition of a prison sentence instead of a presumptive probation sentence because Guerrero committed her crime while on felony bond. Guerrero speculates on appeal that her minor sons' testimony, if given in person rather than by proffer, would have potentially mitigated her sentence. We are unpersuaded by this argument because the district court clearly emphasized that it believed applying the rule in this case was "absolutely appropriate" considering the nature of the other cases pending against Guerrero at the time. There is nothing in the record to indicate that additional, cumulative testimony would have altered the district court's decision. Any error here was harmless.

Affirmed.

12