NOT DESIGNATED FOR PUBLICATION

No. 121,397

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DONALD C. YOUNG,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed May 29, 2020. Affirmed.

*Luke H. Alsobrook*, of Alsobrook Law Firm, LLC, of Kansas City, Missouri, for appellant, and *Donald C. Young Jr.*, appellant pro se.

*Daniel G. Obermeier*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., WARNER, J., and ROBERT J. WONNELL, District Judge, assigned.

PER CURIAM: Donald Young appeals the district court's summary denial of his K.S.A. 60-1507 motion, asserting the district court should have held an evidentiary hearing to assess his claims. Having carefully reviewed the record and the substance of Young's claims, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The facts surrounding Young's felony-murder conviction are recounted more thoroughly in his direct appeal. *State v. Young*, 277 Kan. 588, 87 P.3d 308 (2004).

1

Briefly, late on October 2, 2001, someone killed Kevin Horn after firing multiple shots into a car. Police interviewed three witnesses: Rodney Hickman, Daina Frencher, and Russell Waters. All three identified Young as the shooter. Police also interviewed Young's father, who stated his son admitted to his involvement in the shooting.

At trial, the State called Hickman, Frencher, and Young's father to testify. Hickman fled before testifying, so the court allowed the State to read Hickman's prior police statement to the jury. Contrary to her earlier identification, Frencher testified she could not see the shooter's face. But her description of the shooter's clothes was consistent with what Young wore that evening. And Young's father recanted his prior statement to police, testifying Young never admitted his involvement in the shooting. The State sought to impeach the father by using his police statement. Young maintained his innocence, stating he had been at his parents' house the night of the murder. A jury convicted him of first-degree felony murder.

In March 2005, Young filed his first K.S.A. 60-1507 motion. The district court denied it after an evidentiary hearing, and this court affirmed. *Young v. State*, No. 101,325, 2010 WL 2502874, at *1 (Kan. App.), *rev. denied* 290 Kan. 1105 (2010). Young filed a second habeas motion in August 2016. The district court again denied his motion, and Young filed a notice of appeal.

In November 2017, while the appeal of his 2016 motion was pending, Young received a letter from a Pennsylvania inmate named Gillette Hawkins. In the letter, which Hawkins styled as an unsworn "affidavit," Hawkins claimed responsibility for killing Kevin Horn in 2001. Hawkins sent a more detailed letter in January 2018. Young dismissed his pending appeal and filed a motion under K.S.A. 60-1507 for a new trial based on newly discovered evidence.

2

Upon receiving the motion, the State researched the veracity of Hawkins' statement. The State concluded that Hawkins, who is serving a life sentence for first-degree murder in Pennsylvania for an October 2005 shooting (see *Hawkins v. Superintendent of SCI-Huntington*, No. 2:13-cv-0042, 2016 WL 4197200, at * 1 [W.D. Pa. 2016]), is a person of dubious credibility. He has sent similar affidavits to inmates in Oklahoma and Alaska, claiming to have performed murders in those states. Furthermore, in July 2007, Hawkins told police he had previously been sexually abused by a Pittsburgh church pastor. But at the pastor's 2008 trial, Hawkins stated he was testifying because another witness paid him to do so. When a review of Hawkins' bank account showed he had not received any payment, he stated he lied all the time and recanted his allegations. Hawkins would have been 16 years old at the time of Horn's murder and appears to have lived in Pennsylvania at the time.

The State highlighted this research in its responses to Young's K.S.A. 60-1507 motion. It also attached the statements Waters and Young's father made to the police, both identifying Young as the shooter. Young objected to these statements, arguing they were hearsay, had not been admitted at his trial for their substance, and had not been subject to cross-examination.

The district court appointed counsel to represent Young and held a hearing in December 2018. But the district court summarily denied the motion without an evidentiary hearing, finding Hawkins' unsworn affidavit insufficiently credible to present a colorable claim of actual innocence under K.S.A. 60-1507(f)(2). The court also found that several people had identified Young as the shooter in Horn's murder, and Hawkins' affidavit did nothing to undermine those witnesses' statements.

Young appeals, arguing his motion should have received an evidentiary hearing. Although his appellate attorney filed a brief, Young also filed a pro se supplemental brief, attaching notarized statements from his mother and father corroborating his 2001 alibi.

3

Young has also filed several pro se motions and a letter under Kansas Supreme Court Rule 6.09 (2020 Kan. S. Ct. R. 39), claiming the court should not consider the statements Frencher, Waters, and Young's father gave to the police because they are inadmissible hearsay and were not subject to cross-examination at trial.

DISCUSSION

A prisoner generally is entitled to a hearing on a K.S.A. 60-1507 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." K.S.A. 2019 Supp. 60-1507(b); *Beauclair v. State*, 308 Kan. 284, 302, 419 P.3d 1180 (2018). When the district court summarily denies a K.S.A. 60-1507 motion, as the court did here, we review that decision de novo to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to relief. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

In general, motions under K.S.A. 60-1507 must be filed within one year after the completion of a person's direct appeal. K.S.A. 2019 Supp. 60-1507(f)(1). A court may only consider a motion filed outside this one-year time limitation if the motion demonstrates manifest injustice. K.S.A. 2019 Supp. 60-1507(f)(2).

Relevant here, K.S.A. 2019 Supp. 60-1507(f)(2)(A) allows a court to consider an otherwise-untimely motion for postconviction relief if the prisoner makes "a colorable claim of actual innocence." The statute clarifies that "the term actual innocence requires the prisoner to show it is more likely than not that no reasonable juror would have convicted the prisoner in light of new evidence." K.S.A. 2019 Supp. 60-1507(f)(2)(A).

In *Beauclair*, the Kansas Supreme Court adopted the framework established in *Murray v. Carrier*, 477 U.S. 478, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986), and its progeny to examine an actual-innocence claim. *Beauclair*, 308 Kan. 284, Syl. ¶ 1. The

4

*Carrier* line of cases requires a movant to establish that "'it is more likely than not that no reasonable juror would have convicted [the petitioner] in the light of the new evidence.'" *Beauclair*, 308 Kan. at 300 (quoting *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 851, 130 L. Ed. 2d 808 [1995]). That is, a movant must show "'that [it is] more likely than not [that a] reasonable juror would have reasonable doubt.'" *Beauclair*, 308 Kan. at 301 (quoting *House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064, 165 L. Ed. 2d 1 [2006]). This standard is more rigorous than that required to establish prejudice but less demanding than the clear-and-convincing-evidence quantum of proof. *Beauclair*, 308 Kan. at 300.

In evaluating a motion presenting a claim of actual innocence, courts must ultimately decide "'how reasonable jurors would react to the overall, newly supplemented record'"—that is, what impact the new evidence would likely have on a reasonable juror. 308 Kan. at 301 (quoting *Bell*, 547 U.S. at 538). This determination requires a sweeping review of all the evidence, independent of the rules of admissibility, including evidence that was both improperly admitted or excluded, whether inculpatory or exculpatory, and potentially the credibility of trial witnesses. *Beauclair*, 308 Kan. at 300-01.

Based on these principles, we reject the arguments in Young's Rule 6.09 letter and pro se motions. His Rule 6.09 letter, submitted shortly before the case was submitted for consideration, fails to comply with that rule in either its content or its form. See Supreme Court Rule 6.09(a), (b) (2020 Kan. S. Ct. R. 39). But more importantly for our review, *Beauclair* recognizes—contrary to Young's assertions in his motions and letter—that a court must examine claims of actual innocence "'in light of all the evidence'" before it, including evidence "'excluded or unavailable at trial,'" to determine whether the movant has made a colorable claim. *Beauclair*, 308 Kan. at 300 (quoting *Schlup*, 513 U.S. at 327-28). We thus proceed to the merits of Young's arguments on appeal.

Applying the *Beauclair* analysis here, the district court did not err in finding Young has not met his burden of establishing a colorable claim of actual innocence.

While Hawkins' unsolicited letters purport to confess to Horn's 2001 murder, we agree with the district court's conclusion that Hawkins' false testimony in a 2008 criminal trial and his similar confession letters to prisoners in Oklahoma and Alaska seriously undermine the letters' credibility. And although the letters are styled as "affidavits," they are unsworn statements, not testimony.

Young attempts to enhance Hawkins' credibility by noting the letters contain details omitted from the opinions regarding his direct or habeas appeals. For example, Hawkins correctly refers to Waters by his nickname and describes the caliber of the gun used in the shooting. But we note that this information was only contained in the second of the two letters, after Hawkins had previously corresponded with Young. The inclusion of this additional information does not remedy the serious questions remaining about Hawkins' credibility.

Moreover, the district court correctly found that Hawkins' letters do not undermine the compelling evidence submitted at Young's trial, which a jury found demonstrated his guilt beyond a reasonable doubt. In their police statements, Hickman and Young's father both identified Young as the shooter, and Frencher described the shooter as wearing clothing consistent with what Young wore that night. While the testimony of Young's father and Frencher at trial differed from their previous statements to the police, the jury considered their testimony and their previous statements and nevertheless found Young guilty. We note that the statements provided to the police by Waters and Young's father, attached to the State's responses to Young's K.S.A. 60-1507 motion, and Hickman's police statement, admitted at trial, were all consistent with the jury's finding, as they indicated Young was the shooter.

Thus, the trial record—undisturbed by Hawkins' letters—distinguishes this case from *Beauclair*. The *Beauclair* court remanded the case for an evidentiary hearing after the victim signed an affidavit recanting her accusation that Beauclair raped her. 308 Kan.

6

at 284-85, 289. The victim, who was the only witness, now stated the defendant was innocent, undermining the basis of the charge and his conviction. In contrast, Young has not presented any information to undercut the evidence presented against him at trial, including the fact that multiple witnesses identified him as the person who shot Horn.

We conclude the district court did not err when it concluded Hawkins' confession would not have left a juror with a reasonable doubt regarding Young's guilt. As such, the court correctly found Young's K.S.A. 60-1507 motion failed to state a colorable claim of actual innocence. The district court did not err in resolving Young's case without an evidentiary hearing under K.S.A. 2019 Supp. 60-1507(b).

Affirmed.