NOT DESIGNATED FOR PUBLICATION

No. 126,469

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CARLOS HENRY MENDEZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; DELIA M. YORK, judge. Submitted without oral argument. Opinion filed March 21, 2025. Affirmed.

*Hope E. Faflick Reynolds*, of Kansas Appellate Defender Office, for appellant.

*Nicholas Campbell*, assistant district attorney, *Mark A. Dupree Sr*., district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before MALONE, P.J., SCHROEDER and CLINE, JJ.

PER CURIAM:  Carlos Henry Mendez, a minor, timely appeals his certification for adult prosecution after he shot and killed G.W. The State charged Mendez as a juvenile with intentional murder in the second degree and sought authorization for adult prosecution. After an evidentiary hearing, the district court granted the motion. Mendez later pled guilty to reckless murder in the second degree as an adult and now appeals the district court's order authorizing adult prosecution. After an exhaustive and detailed review of the record, we find no abuse of discretion by the district court. We affirm.

1

During the evening of August 4, 2021, Mendez, G.W., J.V., and other teenagers drove around Kansas City. They later decided to drive to a wooded area by Turner High School to hang out and shoot guns. Early on the morning of August 5, 2021, Mendez—then 16 years old—shot and killed G.W. G.W. was "acting weird," driving erratically, and pointing his gun at some of the other teenagers, including Mendez, who told G.W. to stop. At some point that morning, Mendez communicated with B.A. on Facebook Messenger, suggesting he was going to shoot G.W.

When the teenagers arrived at the wooded area, everyone except J.V. exited the vehicle. While J.V. was still sitting in the front passenger seat, G.W. shot the back of the vehicle with a Glock 19. Mendez and G.W. started arguing, and G.W. pointed his gun at Mendez' cousin. Mendez' cousin responded, "I don't play like that," and pulled out a gun. J.V. heard G.W. ask, "What would you do if I shot him?" G.W. lowered his gun, and Mendez, who was standing behind G.W., shot G.W. in the back. The testimony reflects that Mendez shot G.W. almost instantaneously after G.W. pointed the gun at Mendez' cousin's face. G.W. then dropped his gun and ran while Mendez continued to shoot. G.W. died because of his injuries. Mendez does not dispute he shot G.W. and G.W. died.

The State charged Mendez with intentional murder in the second degree, in violation of K.S.A. 2021 Supp. 21-5403(a)(1), and criminal possession of a weapon, in violation of K.S.A. 2021 Supp. 21-6304(a)(4). The State filed a motion to authorize adult prosecution. The district court held an evidentiary hearing on the State's motion for adult prosecution and, after hearing the evidence, granted the State's motion.

Mendez pled guilty to amended charges of murder in the second degree, reckless, a severity level 2 person felony, in violation of K.S.A. 2021 Supp. 21-5403(a)(2). In exchange for the guilty plea, the State dismissed the charge of criminal possession of a

weapon and agreed to recommend a downward durational departure to a controlling sentence of 96 months' imprisonment. The district court found Mendez guilty of reckless murder in the second degree and sentenced him to a departure sentence of 96 months' imprisonment. Additional facts are set forth as necessary.

ANALYSIS

*Mendez' Decision to Shoot G.W. Supports Adult Prosecution*

Mendez contends the district court lacked substantial competent evidence to support its findings and abused its discretion in evaluating the eight statutory factors used to determine whether a juvenile should be tried as an adult. Mendez requests us to reverse the district court's decision to allow adult prosecution and remand with instructions to proceed under the Revised Kansas Juvenile Justice Code, K.S.A. 38-2301 et seq. For the reasons explained herein, we find Mendez' arguments unpersuasive.

We review a district court's determination on a motion to authorize adult prosecution of a juvenile under a bifurcated standard of review. The district court's factual findings are reviewed for substantial competent evidence, while the legal assessment of the eight statutory factors a court must consider when deciding whether to prosecute a juvenile as an adult is reviewed for an abuse of discretion. See K.S.A. 38-2347(d); *State v. Vonachen*, 312 Kan. 451, 471, 476 P.3d 774 (2020). "Substantial competent evidence '"is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved."'" *State v. Brown*, 300 Kan. 542, 546, 331 P.3d 781 (2014). Appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Vonachen*, 312 Kan. at 471.

3

A district court abuses its discretion if its decision is based on an error of fact or law or is arbitrary, fanciful, or unreasonable. To the extent we must interpret K.S.A. 38-2347(d), we have unlimited review. *Vonachen*, 312 Kan. at 471. Even though Mendez pled guilty, we have jurisdiction to consider the issue on appeal because K.S.A. 38-2380(a) allows a juvenile to appeal the order authorizing adult prosecution after conviction as an adult.

The term "juvenile" is statutorily defined, in relevant part, as a person who is at least 10 years old but less than 18 years old. K.S.A. 2024 Supp. 38-2302(n). This includes Mendez, who was 16 years old at the time he committed the crime. A juvenile is presumed to be a juvenile, and the State has the burden to rebut such presumption by a preponderance of the evidence. K.S.A. 38-2347(a)(1).

K.S.A. 38-2347(d) provides eight factors—to be considered in a holistic approach along with other materials or written reports related to the juvenile's physical, mental, social, and educational history—for the district court to consider in deciding whether to allow adult prosecution of a juvenile. The factors include:

> "(1) The seriousness of the alleged offense and whether the protection of the community requires prosecution as an adult or designating the proceeding as an extended jurisdiction juvenile prosecution;
>
> "(2) whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner;
>
> "(3) whether the offense was against a person or against property. Greater weight shall be given to offenses against persons, especially if personal injury resulted;
>
> "(4) the number of alleged offenses unadjudicated and pending against the juvenile;
>
> "(5) the previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender under this code or the Kansas juvenile justice code and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;

4

"(6) the sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living or desire to be treated as an adult;

"(7) whether there are facilities or programs available to the court which are likely to rehabilitate the juvenile prior to the expiration of the court's jurisdiction under this code; and

"(8) whether the interests of the juvenile or of the community would be better served by criminal prosecution or extended jurisdiction juvenile prosecution." K.S.A. 38-2347(d).

Mendez contends "the first three factors are undoubtedly stacked on top of each other and generally could be viewed as one factor broken into three parts." Our Supreme Court has rejected this argument multiple times. See *Vonachen*, 312 Kan. at 472-73 ("If the Legislature intended for factors one through three to be satisfied and considered as a single factor anytime the charged crime is an off-grid offense, it would have said so."); *Brown*, 300 Kan. at 552 ("Each of these first three factors concern different subject matter. . . . They are not redundant or surplus just because they might necessarily weigh in favor of adult prosecution when particular crimes are alleged. [Citations omitted.]").

The district court found six of the eight factors supported adult prosecution. We will discuss each one in turn.

*Seriousness of the offense*

The district court noted, and Mendez acknowledged, killing another human being is one of the most serious offenses. Mendez contends the State can choose to "charge anything that would sufficiently meet the criteria for a serious offense," and the State's charge alone should not overcome the burden to prosecute Mendez in the juvenile system.

Mendez was charged with intentional second-degree murder, a severity level 1 person felony, and under these facts, the charge was justified. See *State v. Broxton*, 311 Kan. 357, 363, 461 P.3d 54 (2020) ("'The State functionally has unbridled control over what to charge against a defendant—that's the essence of prosecutorial discretion.'"); Kansas Rule of Professional Conduct 3.8(a) (2024 Kan. S. Ct. R. at 397) (prosecutor has ethical duty not to file charges for which prosecutor does not believe there is probable cause). Here, Mendez' charge was not an abuse of the State's discretion. The State elicited testimony from J.V., who explained the events leading to the shooting, how the shooting occurred, and what happened afterward. J.V. testified G.W. pointed a gun at Mendez' cousin and said, "'What would you do if I shot him?'" Mendez' cousin responded with, "I don't play like that," and pulled out a gun. Testimony suggested G.W. lowered his gun and then Mendez shot G.W. in the back.

After the shooting, the teenagers got back in the vehicle, and Mendez asked his cousin for another gun to make sure G.W. was dead. Mendez' cousin gave Mendez a gun; Mendez cocked it to shoot G.W. again, but Mendez' brother stopped him. Mendez then went to his house and grabbed bleach, which he threw into the vehicle before abandoning it.

Before G.W. was shot, Mendez sent Facebook messages to B.A. asking if he should "dust Ritz," which meant shoot G.W. B.A. told Mendez not to do it, and Mendez replied he was going to do it and he was going to take "the 19," meaning he would take G.W.'s Glock 19. In addition to eliciting testimony about these messages, the State entered copies of the messages into evidence as an exhibit. The exhibit is not in the record on appeal. The record reflects Mendez attempted to unsend these messages, but, without the exhibit on appeal, we cannot substantiate that portion of the record. However, the record shows Mendez discussed shooting G.W. before the shooting, shot G.W. early in the morning from behind, considered shooting G.W. again while leaving the scene, and took efforts to cover up the crime. Substantial competent evidence supports the district

6

court's finding that the seriousness of the crime committed weighed in favor of adult prosecution.

*Committed in an aggressive, violent, premeditated, or willful manner*

Rather than arguing the district court erred in finding the offense was committed in an aggressive, violent, premeditated, or willful manner, Mendez merely points to conflicting evidence the district court relied on. Mendez is asking us to reweigh the evidence—something we cannot do. See *Vonachen*, 312 Kan. at 471.

Even so, as explained above, B.A. testified he and Mendez communicated on Facebook Messenger before the shooting. B.A. explained G.W. had been teasing Mendez earlier and pointing a gun at Mendez, which made Mendez angry. Mendez' own expert witness, Dr. Bruce Cappo, considered the possibility Mendez may have acted in self-defense of himself or another person but ultimately opined Mendez' actions were aggressive, violent, and willful as another teenager died because of his actions. Dr. Cappo weighed both the first and second statutory factors in favor of adult prosecution.

The district court explained, "The willful nature of this comes with respect to how long—how many minutes passed before [Mendez] made the decision that he was going to do it. And there are some Facebook messages that speak to that, the time period between the thought and the action." The district court acknowledged expert testimony from Dr. Cappo suggesting the actions may have been impulsive and even noted Dr. Cappo was a respected professional within the community with expertise on adolescent brain development and behaviors in young people. But, again, Mendez had time to consider his actions beforehand, wanted to shoot G.W. again while leaving the scene, and attempted to hide evidence of the crime committed. Substantial competent evidence supports the district court's finding the crime was committed in an aggressive, violent, premeditated, or willful manner.

7

*Offense against a person*

Mendez again argues this factor is redundant to the prior two factors. Evidence showed Mendez shot and killed G.W.—a crime against a person. Substantial competent evidence supports the district court's finding in favor of adult prosecution on this factor.

*Number of alleged offenses unadjudicated and pending*

Mendez admits the district court was correct in finding there was another pending criminal case against him but asserts the district court erred in blaming Mendez for failing to disclose that he shot G.W. at a hearing in his pending case. Mendez also asserts the pending case, in which he was charged with attempted criminal damage to property for "drunkenly damaging a police car[,] is readily distinguishable from a shooting that occurred in defense of self or others."

The district court explained:

"[Mendez] has one pending case, and . . . I called the case number earlier. And it's interesting, when I started really to review the record, this [murder] is alleged to have occurred on August the 5th during the early morning hours.

"On Friday, August the 6th, [Mendez] appeared here in this very court and pled no contest to attempted criminal damage to property, a severity level 10, Non-Person felony. That case was then set for September the 17th. No one mentioned that there had been a loss of life the night before.

"And I'm not saying that [Mendez] should've stood up and said, oh, by the way, I shot and killed someone. But there was no—no mention, no activity, no behavior that led this court to believe that something as horrific as what had happened could possibly have happened. So that is pretty disturbing."

8

The record is clear that Mendez had another pending case, 21-JV-48, awaiting sentencing before the district court. There, Mendez was charged with and pled no contest to one count of attempted criminal damage to property. Because the district court had knowledge of another pending case, it could take judicial notice of the case against Mendez. Substantial competent evidence supports the district court's finding Mendez had another pending case against him.

*Previous adjudications or conviction history*

Mendez concedes his prior juvenile adjudications, starting in 2020, include:

- 20-JV-05: criminal use of weapons, a nonperson misdemeanor;
- 20-JV-435: theft, a nonperson misdemeanor; and
- 20-JV-168: burglary, a nonperson felony.

It appears Mendez admits his behavior escalated over time but argues the escalation demonstrated the need for rehabilitation through the juvenile system. Mendez argues effective intervention through the juvenile system could prevent him from progressing to an eventual anti-social personality disorder. Mendez contends certification to adult status would not provide him with the best opportunity for rehabilitation.

The district court recognized Dr. Cappo's reputation and expertise but disagreed with his conclusion Mendez had no history of violence or aggressive behavior and could have symptoms consistent with an eventual anti-social personality disorder that, with intervention, could be prevented. The district court explained:

"Again, I find Dr. Cappo to be certainly respected in his field. It is, however, difficult for this court to find that [Mendez] doesn't have a history of anti-social behavior, or aggressive or violent behavior based on all of the cases that this court has presided

9

over. There's been an escalation of behavior that cannot be characterized as anything but dangerous for the community and [Mendez].

"The primary goals of the juvenile justice code are to promote public safety, hold juvenile offenders accountable for their behavior, and improve their ability to live productively and responsibly in our community.

"It is this court's opinion that there have been many hearings over the past two years, and many professionals involved in the redirection of resources and supports, all in an effort to accomplish this goal of improving [Mendez'] ability to live more productively."

In addition to relying on Mendez' criminal history, the district court noted Dr. Cappo administered five tests and interviewed Mendez for one hour. Mendez' intensive supervision officer (ISO) testified Mendez was first placed on intensive supervision probation in October 2020 and completed some programs but did not successfully complete the terms of his probation as he had another pending case against him. Mendez' ISO also testified that, in his opinion, there were no more programs locally available to rehabilitate Mendez as he completed the programs offered and essentially exhausted resources. Substantial competent evidence supports the district court's finding Mendez' previous adjudications and conviction history supports adult prosecution.

*Sophistication and maturity*

The district court found Mendez lived with his mother and was not trying to present himself as an independent person, though "his behaviors do seem to indicate otherwise." The district court did not find this factor weighed in favor of adult prosecution, and we agree.

*Facilities or programs available for rehabilitation*

The district court found that Mendez could be placed at the Kansas Juvenile Correctional Complex and participate in programs such as continued education and substance abuse treatment until age 22-and-a-half with some aftercare. The district court concluded this factor did not weigh in favor of adult prosecution, and we agree.

*Interests of the juvenile and the community*

Mendez argues the State presented no evidence as to why the community would be better served by prosecuting Mendez as an adult and the district court made a conclusory finding the community would be better served in this respect.

The district court found, based on the totality of the evidence, Mendez' behavior could not "be characterized as anything but dangerous for the community and [Mendez]." While the district court did not specifically elaborate on its factual findings related to this factor, it explained the aggravated and violent way the crime was committed against another person in the other statutory factors.

Mendez killed another person, which makes it an indisputably serious crime, and Mendez acted in an aggressive, violent, premeditated, and willful manner. Over the course of about two years, Mendez committed multiple crimes which gradually became more severe. Based on the nature of the crime committed and the way it was committed, substantial competent evidence supports the district court's finding that the community would be better served if Mendez were prosecuted as an adult. Mendez is essentially asking us to reweigh the evidence—something we cannot do. See *Vonachen*, 312 Kan. at 471.

The State presented relevant evidence and furnished a substantial basis of fact from which the district court could reasonably determine adult prosecution was appropriate. The district court's factual findings were supported by substantial competent evidence, and the district court's legal assessment of the eight statutory factors, considered in their entirety, was not based on an error of fact or law and was not arbitrary, fanciful, or unreasonable. See *Brown*, 300 Kan. at 546.

Affirmed.